**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Harrisonburg Division**

| | | |
|---|---|---|
| **KENNETH H. ADAMS,** *et al.* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 5:15-cv-00012** |
| | ) | |
| **JAMES B. ALCORN,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' COMBINED MEMORANDUM**
**IN SUPPORT OF THEIR MOTION TO DISMISS AND TO JOIN NECESSARY PARTIES**
**AND IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Defendants James B. Alcorn, Clara Belle Wheeler, and Singleton McAllister, in their official capacities as Chairman, Vice-Chairman, and Secretary, respectively, of the Virginia State Board of Elections, and the Virginia Department of Elections (collectively, the Commonwealth) state as follows in support of their Rule 12(b) Motion to Dismiss and to Join Necessary Parties and in opposition to the Plaintiffs' Motion for Preliminary Injunction (docket # 9).

**CONTENTS**

In Support of Dismissal ............................................................................................2

In Support of Joining Necessary Parties ................................................................11

In Opposition to a Preliminary Injunction .............................................................14

## IN SUPPORT OF THE COMMONWEALTH'S MOTION TO DISMISS

### ISSUES

For the Court to have subject matter jurisdiction, a plaintiff must have standing, in the form of an injury-in-fact that is traceable to the challenged action and likely to be redressed by a ruling in their favor.  The Republican Party of Virginia's rules delegate to Plaintiffs the authority to determine the nomination method only "where permitted to do so under Virginia Law," and Virginia law does not permit Plaintiffs to do so in the election at issue.  Given that there is no conflict between Virginia law and Party rules, have Plaintiffs shown the elements of standing?

States may require political parties to nominate by primary in order to promote democracy, as long as States do not dictate which groups of voters may participate in a party's nomination process.  In light of *Miller v. Brown*, applying Va. Code § 24.2-509(B) to require a primary does not dictate with whom the party associates in the nominating process.  Have Plaintiffs stated a claim that Virginia may not mandate a primary after an incumbent's designation pursuant to § 24.2-509(B)?

### STANDARDS OF REVIEW

**For Rule 12(b)(1)**

"The party asserting subject matter jurisdiction has the burden of proving that the court has jurisdiction over the case."  *Raya v. Clinton*, 703 F. Supp. 2d 569, 572 (W.D. Va. 2010) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  If there is a factual dispute regarding whether jurisdiction exists, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Id.*  If "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," however, the same standard applies to a

Rule 12(b)(1) motion as for a Rule 12(b)(6) motion.  *Adams*, 697 F.2d at 1219.

**For Rule 12(b)(6)**

In considering a Rule 12(b)(6) motion, the Court "accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  But the Complaint's factual allegations "must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  The Court "'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Phillips*, 572 F.3d at 180 (quoting *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009)).  The Court "may properly take judicial notice of matters of public record" and "may also consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Phillips*, 572 F.3d at 180 (citations omitted).

## SUMMARY OF FACTS

The Republican Party of Virginia (the Party) is a political party governed by rules memorialized in its "Plan of Organization" (the Plan).  *See* Complaint ¶ 3.  *See generally* Ex. A to the Complaint (a copy of the Plan, as amended through March 22, 2014); Ex. F to the Complaint (a copy of the Plan, as amended through December 5, 2014).[1]

The two plaintiffs are the 24th Senatorial District Republican Committee, "an

---

[1]  Plaintiffs moved, with the Commonwealth's consent, to add the December 2014 version of the Republican Party of Virginia's Plan of Organization to the record as Exhibit F to the Complaint. The Court granted that uncontested motion moments before this filing.  The March 2014 and December 2014 versions of the Plan are identical in the respects material to this brief, but citing both versions in this brief seemed like it may be helpful nonetheless.

unincorporated association, designated pursuant to [the Plan] … as a Legislative District Committee" and Kenneth H. Adams, a Virginia resident, registered voter, and Chairman of that Committee.  (Complaint ¶¶ 3, 4.)

"The Plan delegates the authority of the Party to determine the means of nomination for candidates for the Virginia State Senate to the Legislative District Committee" in Article V § D(1)(a), which states: "The Legislative District Committee shall determine whether candidates for Legislative District public office shall be nominated by Mass Meeting, Party Canvass, Convention or Primary, where permitted to do so under Virginia Law." (Complaint ¶ 13; Complaint Exs. A & F at 13.)

The part of Va. Code § 24.2-509(B) challenged by Plaintiffs in this case provides that "A party shall nominate its candidate for election for a General Assembly district where there is only one incumbent of that party for the district by the method designated by that incumbent, or absent any designation by him by the method of nomination determined by the party."  Va. Code § 24.2-509 has not been amended since 1993.[2]

Emmett W. Hanger, Jr. is the current Senator representing the 24th Senatorial District. *See* Complaint ¶ 16.  By letter dated February 23, 2015, delivered to Plaintiff Adams and the Commonwealth, Senator Hanger designated a primary as the method of nomination for the candidate of the Party in the 24th Senatorial District in the 2015 election cycle.  (Complaint ¶ 16; Complaint Ex. D.)

Senator Hanger's designation was contrary to the wishes of the Plaintiffs, who "adopted a resolution designating a convention as the means of nomination" on December 3, 2014.

---

[2]   Years and Acts of Assembly chapter citations for amendments appear in the annotated Code of Virginia, published by Lexis Nexis, and in the Commonwealth's online Code of Virginia at http://law.lis.virginia.gov/vacode/title24.2/chapter5/section24.2-509/.

(Complaint ¶¶ 14, 24; Complaint Ex. B.)

The Commonwealth has signaled its intent to hold a primary to elect a Republican candidate for the 24th Senatorial District.  *See* Complaint ¶ 24; Complaint Ex. E (a copy of a chart created by the Virginia Department of Elections showing "2015 Methods of Nomination" for each Virginia Senate district).

## ARGUMENT

### I. The Court lacks subject matter jurisdiction because the Plaintiffs do not have standing.

Plaintiffs have alleged that they are injured by Virginia elections statutes overriding the Republican Party of Virginia's Plan.  The Plan does not support the Plaintiffs' allegations, so the Plaintiffs have no standing and the Court has no jurisdiction.

### A. Jurisdiction requires standing, which requires an injury to the Plaintiffs that is traceable to the challenged state action and redressable.

"Article III gives federal courts jurisdiction only over 'cases and controversies.'"  *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006); *accord* U.S. CONST. art. III, § 2, cl. 1.  The doctrine of standing is "integral" to the Constitution's case or controversy requirement.  *Miller*, 462 F.3d at 316 (citing *Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997).  The three requisite components of constitutional standing are that (1) the plaintiffs must have suffered an injury-in-fact, "an actual or threatened injury that is not conjectural or hypothetical"; (2) "the injury must be fairly traceable to the challenged conduct"; and (3) "a favorable decision must be likely to redress the injury."  *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

### B. Plaintiffs claim to be injured by Virginia elections statutes contradicting the Plan.

The Complaint claims two injuries, both of which boil down to allegations that Virginia elections statutes violate the Party's associational rights by contradicting the Party's Plan.

5

Plaintiffs' primary claim is that Va. Code § 24.2-509(B) allowing an incumbent to determine the method of nomination, which Senator Hanger has done, overrides the wishes of the Party and prevents the Party from determining their own nomination method.  *See* Complaint ¶¶ 1, 12, 22 24, 25, 26.

Plaintiffs also allege that Va. Code §§ 24.2-516 & 24.2-527 "obligate Adams, as Chairman of the Committee, to certify that a primary has been selected as the manner of determining the Republican nominee … in contravention of the terms of the Plan and, therefore, the associative rights of Adams, the Committee and the Party." (Complaint ¶ 19.)

If Virginia election statutes do not contradict the Party's Plan with respect to the election at issue, Plaintiffs have no injury.

### C.      The Party Plan does not support the Plaintiffs' alleged injuries, and Virginia elections statutes do not contradict the Plan in this case.

The Court can and should interpret the Plan (Exhibits A & F to the Complaint) using well-established common-law principles of contract interpretation.  The rules of a voluntary association are contractual in nature and are construed and enforced by courts as a contract between the members.[3]  Here, Plaintiffs claim that the Plan entitles them to select a non-primary method of nomination and that the Commonwealth's denial of that right is a constitutional injury.  The plain meaning of the Plan dooms Plaintiffs' claim.

Plaintiffs are (i) a "Legislative District Committee" exercising authority delegated by the Republican Party of Virginia, and (ii) a Party member who is the chairman of that Committee. (Complaint ¶¶ 3, 4, 13.)  The relevant delegation, in Article V § D(1)(a) of the Plan, states: "The

---

[3]   *Gottlieb v. Economy Stores, Inc.*, 199 Va. 848, 856, 102 S.E.2d 345, 351 (Va. 1958) ("The constitution and by-laws adopted by a voluntary association constitutes a contract between the members, which, if not immoral or contrary to public policy, or the law, will be enforced by the courts.") (quoting *Bradley v. Wilson*, 138 Va. 605, 612, 123 S.E. 273, 275 (Va. 1924)); *see also Amalgamated Clothing Workers v. Kiser*, 174 Va. 229, 236, 6 S.E.2d 562, 564-65 (Va. 1939).

Legislative District Committee shall determine whether candidates for Legislative District public office shall be nominated by Mass Meeting, Party Canvass, Convention or Primary, **where permitted to do so under Virginia Law**."  Complaint Exs. A & F at 13 (emphasis added).

The Plan's "where permitted to do so under Virginia Law" qualification on Plaintiffs' Committee's authority must be given its plain meaning.  *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999) (applying Virginia law's "plain meaning" rule and stating the well-established principle that "In interpreting a contract, a court should … give meaning to every clause where possible.").  The plain meaning of the Virginia Law clause in the Plan's delegation to Legislative District Committees is that the Plan delegates authority to determine the nomination method only where the Commonwealth's elections laws permit such commitees to exercise such authority.

Other provisions of the Plan making similar delegations to other Party committees omit the "where permitted to do so under Virginia Law" qualification.  *See* Complaint Exs. A & F at 8 (art. III § D(1)(b), providing that "It [the State Central Committee] shall determine whether candidates for statewide public office shall be nominated by Convention, Party Canvass or Primary."); *id.* at 12 (art. IV § D(1)(a), providing that "The [Congressional] District Committee shall determine whether candidates for District public office shall be nominated by Convention, Party Canvass or Primary."); *id.* at 15 ("The Unit Committee shall determine whether candidates for local and constitutional public offices shall be nominated by Mass Meeting, Party Canvass, Convention, or Primary and whether Unit Chairman and Committee members shall be elected by Mass Meeting, Party Canvass, Convention, or Primary.").

The inclusion of the "Virginia Law" qualification with respect to Legislative District Committees, combined with its omission elsewhere, makes clear that the Plan defers to Virginia

elections law, rather than contradicting it, with respect to the authority of Plaintiffs' Committee to determine the method of nomination in the election at issue.  *See Hitachi Credit Am. Corp.*, 166 F.3d at 624 ("a court should read the contract as a single document and give meaning to every clause where possible.  Such an interpretation gives effect to the 'presumption that the parties have not used words aimlessly.'") (citation omitted).  Because the Plan defines Plaintiffs' authority by what is permitted under Virginia law, which includes § 24.2-509(B), there is no conflict between the Plan and Virginia law with respect to who determines the method of nomination for the election at issue.

Given that there is no conflict between the Plan and Virginia law in this case, Plaintiffs do not have the injuries alleged in the Complaint.  *See, e.g.*, *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("in the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed. R. Civ. P., the exhibit prevails").  Indeed, Plaintiffs admit the Plan controls and defines the scope of their authority.  *See* Mem. Supp. Pls.' Mot. Prelim. Injunction (docket #10) at 3 ("the Plan is the Party's definitive statement on any matter it addresses").

Because a primary is not contrary to the Plan in this case, the Complaint's second alleged injury, that Adams is required by Virginia law to certify a primary "in contravention of the terms of the Plan" (Complaint ¶ 19), likewise fails.

Moreover, the alleged injury to Adams also does not exist as a matter of law because it depends on misstating the statutory requirements and further contradicting the exhibits attached to the Complaint.

Va. Code §§ 24.2-516 & 24.2-527 do not require Plaintiff Adams to certify that a primary has been selected.  Under § 24.2-516, there are two ways to satisfy the requirement to notify the

State Board of Elections of a primary:

> The requirement to notify the Board of the adoption of a direct primary shall be satisfied when the Board receives by the deadline (i) written notice from the appropriate party chairman **or** (ii) a copy of the written notice from an incumbent officeholder to his party chairman of the incumbent's selection, pursuant to § 24.2-509, of the primary as the method of nomination.  [emphasis added]

As the Complaint acknowledges (in ¶¶ 16 & 24), and as Exhibits D and E to the Complaint show, the Commonwealth was notified and is proceeding with a primary under the second alternative, which does not require action by Adams.  Indeed, Exhibit E shows that the Commonwealth has recorded Plaintiffs' "Nonprimary" preference.

Va. Code § 24.2-527 does not concern "certify[ing] that a primary has been selected."  It requires only that parties' committee chairmen perform the ministerial duties of furnishing the names of primary candidates to the state and local electoral boards and certifying (i) that the candidates met "the required minimum number of signatures of qualified voters for that office," and (ii) "the order and date and time of filing" of the candidate petitions.  Va. Code § 24.2-527(A).  These tasks do not involve certifying the selection of a primary, and the Complaint does not allege that making these ministerial certifications infringes upon Adams' associational rights.

As shown by the exhibits to the Complaint, Plaintiffs do not have the injury-in-fact required for standing, so the case must be dismissed for lack of subject matter jurisdiction.

**C.    Causation and redressability are missing too because the Plan is responsible for Plaintiffs not being able to choose a non-primary method of nomination in the election at issue.**

The Fourth Circuit twice has considered the constitutionality of Virginia's open primary law, Va. Code § 24.2-530, as applied to a Republican Party of Virginia election.  In *Miller v. Brown*, 503 F.3d 360 (4th Cir 2007), the Fourth Circuit held that the statute was facially constitutional (*id.* at 367-68) but unconstitutional as applied because in that instance it contradicted the Party's Plan with respect to a closed primary.  *See id.* at 362-63.  In *Marshall v.*

*Meadows*, which challenged the open primary law as applied to an election for United States Senator, the Fourth Circuit dismissed the challenge for lack of standing.  105 F.3d 904, 906-07 (4th Cir. 1997).  The different outcomes can be explained by whether, in each case, there was a conflict between application of a Virginia statute and the Party's Plan.

Where the Party's choices in the Plan are responsible for the nomination method about which the Plaintiffs complain, the causation and redressability elements of standing are absent:

> Because the alleged injury is caused by a voluntary choice made by the Virginia Republican Party and not the Open Primary Law, the plaintiffs have not established causation.  The Virginia Republican Party has made its choice to conduct a party primary in the manner it desires and there is no reason for us to interfere with that voluntary decision….
>
> Finally, the plaintiffs have not demonstrated that their alleged injury can be redressed if we declared the Open Primary Law unconstitutional.  If the Virginia Republican Party voluntarily elects an "open" primary, which it is legally entitled to do, then there is nothing this court can do…

*Marshall*, 105 F.3d at 906-07 (footnote omitted).

Here the Plan expresses the Party's choice to limit Plaintiffs' right to determine the nomination method to instances "permitted … under Virginia Law."  Complaint Exs. A & F at 13 (art. V(D)(1)(a)).  The Republican Party of Virginia is entitled to allow the incumbent to choose the nomination method.  The Party has done so here by deferring to Virginia law.  Because the Party's choice is responsible for Senator Hanger being able to choose the nomination method, Plaintiffs have failed to show the causation and redressability required for standing.  The Court therefore lacks subject matter jurisdiction.

## II.    Plaintiffs have failed to state a claim.

The Plaintiffs allege a deprivation of their constitutional rights because of a conflict between Virginia elections law and the Republican Party of Virginia's Plan.  *See* Complaint ¶¶ 1, 19, 20, 22, 26, 27.  Plaintiffs have failed to state a claim for two reasons.

10

First, the Plan is consistent with Virginia law.  *See supra* at 6-8.  Given that the Party has chosen in its Plan not to empower Plaintiffs to choose the nomination method in the election at issue, Plaintiffs have failed to state a claim that Virginia law has deprived them of their rights.

Second, the Commonwealth is entitled to mandate a primary so long as it does not force the Party to associate with voters who do not share its views, and *Miller v. Brown*, 503 F.3d 360 (4th Cir. 2007), removes forced association concerns.  *See infra* at 21-23.

Accordingly, the Court should dismiss the case for failure to state a claim upon which relief may be granted under Rule 12(b)(6).

## IN SUPPORT OF JOINING NECESSARY PARTIES

### ISSUE

Rule 19(a) of the Federal Rules of Civil Procedure requires joinder of anyone who claims an interest relating to the subject of the action when disposing of the action in the person's absence may affect that interest or subject an existing party to additional risk.  Senator Hanger has interests in the subject of this action that may be affected by disposition of this case, and the Commonwealth may be subject to other claims if all interested parties are not joined in this case.  Should the Court order joinder of Senator Hanger and any other interested parties?

### STANDARD OF REVIEW

Rule 12(b)(7) allows dismissal of a claim for failure to join a party under Rule 19.  The first step of the inquiry requires a court to "determine whether a party is 'necessary' … because of its relationship to the matter under consideration pursuant to Rule 19(a)." *Nationwide Prop. & Cas. Ins. Co. v. Jacobsen*, case no. 7:14-00516, 2015 U.S. Dist. LEXIS 3212 at 3 (W.D. Va. Jan. 12, 2015) (citing and quoting *Owens-Ill., Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999)).

"If a court determines that a party is necessary, it must order joinder." *Id.* Only if joinder

destroys jurisdiction must a court "move to step two of the inquiry and determine whether the

party is indispensable under Rule 19(b) such that the proceeding cannot continue in the party's

absence." *Id.* The party asserting the Rule 12(b)(7) defense "bears the burden of showing that a

person who has not been joined is a necessary and indispensable party." *Id.* (citing *Am. Gen. Life*

*& Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005)).

**I.    Senator Hanger must be joined as a party in view of his interest in the subject
       matter of this action, and his joinder would not affect jurisdiction.**

Emmett W. Hanger, Jr. is the incumbent Senator in the 24th Senatorial District, and it is

pursuant to his designation of the nomination method that the Commonwealth is proceeding with

preparations for a primary. *See* Complaint ¶¶ 16 & 24 & Complaint Ex. D. Plaintiffs seek a

preliminary and permanent injunction prohibiting the Commonwealth "from implementing a

primary election to determine the Republican nomination for Virginia Senate District 24 for the

2015 general election cycle" and a declaration that such nomination "shall be determined by a

convention." Complaint at 9 (Relief Requested ¶¶ C & D). That relief, if granted, would

override Senator Hanger's designation of a primary pursuant to Va. Code § 24.2-509(B).[4]

Senator Hanger plainly claims an interest and right in designating the method of

nomination, which will be decisively affected by the Court's decision in this case. There can be

no more textbook case of a party who "claims an interest relating to the subject of the action and

is so situated that disposing of the action in the person's absence may … as a practical matter

impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a). Senator

---

[4]   Moreover, the Commonwealth understands that Senator Hanger has not filed paperwork to be
a candidate at the convention that Plaintiffs wish to hold. *See, e.g.*, Mem. Supp. Moxley
Intervention (docket # 17-1) at 4-5. Thus, if Plaintiffs prevail in this case and the nominee is
determined by convention, Senator Hanger's interest in seeking the Republican nomination
might be extinguished.

Hanger is a necessary party who must be joined.

Joinder of Senator Hanger is immaterial to jurisdiction because this case was filed under a claim of federal question jurisdiction, not diversity jurisdiction.  *See* Complaint ¶ 2.

If the Court dismisses the case for lack of subject matter jurisdiction or for failure to state a claim, joinder of Senator Hanger would be unnecessary.  If the Court does not dismiss the case, Senator Hanger should be joined and heard.

## II. The Court should order joinder of Senator Hanger and any other interested parties because failing to join them would leave the Commonwealth at risk of further litigation and inconsistent obligations.

Rule 19 also requires joinder where disposing of the action in the absence of a person "may … leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a).

Here, if Senator Hanger or another interested party is not joined and is aggrieved by the result of this case, there is a substantial risk of a further lawsuit.[5]  It should go without saying that further litigation related to the subject matter of this case would be an undesirable drain on the Commonwealth's resources.  As the Notes of the Advisory Committee on the 1966 Amendments (the most recent substantive amendments) to Fed. R. Civ. P. 19(a) state, "The interests that are being furthered here [through joinder] are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter."  The Commonwealth should not be put at risk of further litigation, and inconsistent obligations potentially resulting from such litigation, when all interested parties can be joined in this case.

---

[5]   The example of another interested party that comes to mind is another candidate seeking the Republican nomination in the 24th Senatorial District, such as Intervenor Daniel Moxley. Because of local party officials' role in receiving candidate petitions and furnishing the names of those that have met signature requirenst (*see* Va. Code § 24.2-527 & *supra* at 9), Plaintiffs may be in a better position than the Commonwealth at this point to identify the other candidates.

The Court should order joinder of Senator Hanger and any other interested parties to relieve the Commonwealth of risk and promote judicial economy by bringing all parties with interests in the subject matter of this action before the Court.

## IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
### ISSUES

A political party has the right to determine its own internal governance.  The Republican Party of Virginia, in its Plan, has freely chosen to defer to Virginia law, including the incumbent's choice provision of Va. Code § 24.2-509(B), in a case like this one.  Where the Party's Plan calls for and is consistent with applying Virginia law, is there any burden on Party members' First Amendment rights?

States may require political parties to nominate by primary in order to promote democracy, and doing so does not severely burden a party's First Amendment associational rights as long as the State does not dictate which groups of voters may participate in the party's nomination process.  In light of *Miller v. Brown*, applying Va. Code § 24.2-509(B) to require a primary does not dictate with whom the party associates in the nominating process.  Are Plaintiffs likely to succeed in showing that Virginia may not mandate a primary after an incumbent's designation pursuant to § 24.2-509(B)?

The equitable defense of laches applies when a plaintiff inexcusably delays bringing suit and the delay causes prejudice.  The purported conflict over who chooses the nomination method existed at least as early as March 2014, and Plaintiffs were preparing for a lawsuit in early December 2014, yet they delayed filing until the end of February, impacting candidates and the Commonwealth's required election calendar.  Does laches bar injunctive relief?

## STANDARDS OF REVIEW

**For Preliminary Injunctions**

The Commonwealth agrees with Plaintiffs that obtaining a preliminary injunction requires Plaintiffs to make a clear showing that (1) Plaintiffs are likely to succeed on the merits; (2) Plaintiffs will likely suffer irreparable harm absent preliminary relief; (3) the balance of hardships weighs in Plaintiffs' favor; and (4) the injunction is in the public interest. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (citing *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008)). Two other points are material.

First, a mandatory injunction, which disturbs the status quo ante, "in any circumstance is disfavored." *League of Women Voters of N.C.*, 769 F.3d at 236 (quoting *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994)). Here, the requested injunction would halt the ongoing primary process and also require that the Commonwealth accept a nomination by the Republican convention called by Plaintiffs. The injunction sought is mandatory. *See id.*

Second, "in the context of an alleged violation of First Amendment rights," the remaining equitable factors bearing on the propriety of an injunction typically collapse into the likelihood of success on the merits. *See Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 190-91 (4th Cir. 2013). The merits tend to subsume the other factors because Plaintiffs suffer irreparable harm if they are correct on the merits but suffer no harm if they are not. On the other hand, the State suffers irreparable harm as a matter of law when its enactments are declared unconstitutional and enjoined. *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) ("'any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury'") (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in

chambers)). And although the public has no interest in enforcing an invalid law, *see Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003), the public does have an interest in upholding the valid enactments of its representatives. *E.g.*, *Maryland*, 133 S. Ct. at 3.

**For Challenges to Election Laws and Regulations**

Plaintiffs' statement of the standard for challenges to election statutes is misleadingly oversimplified. Courts evaluate the constitutionality of statutes governing elections using the framework established in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and modified in *Burdick v. Takushi*, 504 U.S. 428 (1992). The *Anderson/Burdick* approach provides that:

> A court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against the "precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Id.* at 434 (citing *Anderson*, 460 U.S. at 789, and *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 213-14 (1986)).

*Clingman v. Beaver*, 544 U.S. 581 (2005), further refined the *Anderson/Burdick* approach to distinguish between regulations that impose a severe burden and those that do not:

> Regulations that impose severe burdens on associational rights must be narrowly tailored to serve a compelling state interest. However, when regulations impose lesser burdens, "a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions."

544 U.S. at 586-87 (citations to *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997), omitted).

As *Clingman* held, "**not every electoral law that burdens associational rights is subject to strict scrutiny.** Instead, as our cases since *Tashjian* have clarified, **strict scrutiny is appropriate only if the burden is severe**." 544 U.S. at 592 (emphases added) (citing *California Democratic Party v. Jones*, 530 U.S. 567, 582 (2000), and *Timmons v. Twin Cities Area New*

*Party*, 520 U.S. 351, 358 (1997)); *accord Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 451-52 (2008).

## ARGUMENT

**I.     The Commonwealth is entitled to broad deference in regulating elections so long as it does not severely burden a party's constitutional rights.**

The Constitution of Virginia provides that "[t]he General Assembly shall provide for the nomination of candidates, shall regulate the time, place, manner, conduct, and administration of primary, general, and special elections, and shall have power to make any other law regulating elections not inconsistent with this Constitution."  Va. Const. art. II § 4.  The United States Constitution likewise expressly recognizes state legislatures' right to regulate elections, even for federal offices.  *See* U.S. Const. art. I § 4 ("The Times, Places and Manner of holding elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof.").[6] The Supreme Court long ago said that it "cannot be doubted that these comprehensive words embrace authority to provide a complete code for congressional elections."  *Smiley v. Holm*, 285 U.S. 355, 366 (1932).  And the Court has recently confirmed that the States' "broad power" to regulate elections for federal offices "is matched by state control over the election process for state offices." *Wash. State Grange*, 552 U.S. at 451.

Per the standard of review described above, the constitutionality of state election regulations often turns on whether the challenged state action imposes a "severe burden" on First Amendment rights.  Where state action would control party governance or force a party against its will to include or exclude non-members from the nomination process, courts generally have found a severe burden that will be ruled unconstitutional if there is no compelling state interest or

---

[6]   Indeed, election regulation is "one of the few areas in which the [U.S.] Constitution expressly requires action by the States" and contains an "express delegation[] of power to the States to act."  *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 804-05 (1995).

the law is not narrowly tailored to protect such an interest.  *See, e.g.*, *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214 (1989) (striking down California's ban on primary endorsements and its imposition of eligibility requirements and term limits on party officers); *Tashjian v. Republican Party*, 479 U.S. 208 (1986) (overturning Connecticut's mandate of a closed primary where the party's rules allowed independents to participate).

On the other hand, where state election regulation imposes only reasonable or modest burdens, courts have upheld state regulations based on State administrative interests.  Indeed, courts have even upheld election regulation in cases where a law has a practical impact on party governance or on associations between parties and candidates or voters.  *See, e.g.*, *Clingman v. Beaver*, 544 U.S. 581, 590 (2005) (upholding Oklahoma's semiclosed primary system, which "only minimally" burdened associational rights because voters could still switch affiliation to participate in a party primary); *Jones*, 530 U.S. at 572 (2000) ("a State may require party registration a reasonable period of time before a primary election") (citing *Rosario v. Rockefeller*, 410 U.S. 752 (1973)); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997) (upholding Minnesota's ban on "fusion," the electoral support of a single set of candidates by two or more parties).  Notably, the Supreme Court twice has expressly approved the right of states to regulate elections by requiring the use of primaries.  *See Jones*, 530 U.S. at 572 (2000) ("a State may require parties to use the primary format for selecting their nominees, in order to assure that intraparty competition is resolved in a democratic fashion"); *American Party of Texas v. White*, 415 U.S. 767, 781 (1974).[7]

---

[7]   Plaintiffs admit that the Supreme Court "has on occasion even upheld statutes that interfere with the internal processes of political parties, including those processes by which they choose the method by which candidates are nominated" and specifically that "the Court has stated that a state can require a political party to conduct a primary..."  Mem. Supp. Plaintiffs' Mot. for Prelim. Injunction (docket # 10) at 12.

*Miller v. Brown* and other Fourth Circuit case law recognize and further illustrate the distinction between impermissible laws that impose a "severe burden" on First Amendment rights and permissible laws that involve a lesser burden. *Miller* presented a classic severe burden, in that application of Virginia's open primary law in the circumstances at issue would have forced a party, against its wishes, to allow participation by non-members. *See* 503 F.3d at 368. More recently, the Fourth Circuit upheld South Carolina's "sore-loser" statute, which prohibited a candidate who had lost one party's primary from appearing on the general election ballot for any party, noting that the statute "did not force the Green Party 'to have [its] nominees, and hence [its] positions' determined by members of other political parties." *S.C. Green Party v. S.C. Election Commission*, 612 F.3d 752, 757 (4th Cir. 2010) (quoting *Jones*, 530 U.S. at 577).

Plaintiffs' brief wrongly claims that the "closest analogy" to this case is *Democratic Party of U.S. v. Wisconsin*, 450 U.S. 107 (1981), which overturned Wisconsin's mandate of an open primary where it conflicted with party rules that allowed only party members to vote in a primary. *Democratic Party of U.S. v. Wisconsin* is inapt because this case does not concern any State mandate regarding who participates in a party nomination process.

In light of the Republican Party of Virginia's Plan, application of Va. Code § 24.2-509(B) imposes no burden in this case. *See infra* § II. But if the Court concludes otherwise, it should recognize that, where an incumbent has chosen a primary, application of Va. Code § 24.2-509(B) imposes a permissible burden. *See infra* § III.

## II.    There is no burden at all on Plaintiffs' constitutional rights because the Republican Party of Virginia's Plan defers to and is consistent with application of Virginia law in this case.

As described more fully above (*see supra* at 5-6), the Plaintiffs' case boils down to their claim that Virginia elections law imposes requirements that conflict with the Republican Party of Virginia's Plan. That claim is mistaken as a matter of law.

The Plan expressly incorporates Virginia law into its delegation of authority to Plaintiffs: "The Legislative District Committee shall determine whether candidates for Legislative District public office shall be nominated by Mass Meeting, Party Canvass, Convention or Primary, **where permitted to do so under Virginia Law**."  Complaint Exs. A & F at 13 (emphasis added); Adams Declaration (docket # 9-1) Ex. 1 & Ex. 8 at 13 (emphasis added).

The limiting "Virginia Law" clause – which does not appear in the Plan's similar delegations to other Party committees (*see supra* at 7) – must be given meaning, and its unambiguous meaning is that the Party has chosen to empower Plaintiffs to determine the nomination method only where Virginia law permits them to do so.  Plaintiffs are not "permitted … under Virginia Law" to determine the method of nomination "where there is only one incumbent of that party"; instead, the challenged sentence of Va. Code § 24.2-509(B) permits the incumbent to designate the nomination method.

The acts of key Party officials give further reason to doubt Plaintiff's claim that the Plan does not allow incumbents to choose the nomination method.  Two members of the Republican Party of Virginia's State Central Committee have used § 24.2-509(B) to choose the 2015 nomination method for their districts, which are subject to the same Plan provisions as the 24th Senatorial District.  *See* Complaint Ex. E (showing that Senators John Cosgrove and Bill Stanley selected primaries for the 14th and 20th Senatorial Districts, respectively); State Central Committee, Republican Party of Virginia, *at* <u>http://rpv.org/about/state-central-committee/</u> (showing that Senators Cosgrove and Stanley are members) (copy attached as Ex. 1) (last visited March 19, 2015).  The State Central Committee is the final authority within the Party for interpretation of the Plan.  Complaint Ex. A at 24-25 & Ex. F at 26-27 (Art. X §§ (A)(3) & (C)). The Party cannot have the Plan both ways: if the Plan empowers Legislative District Committees

to select the nomination method in all instances, then the incumbent members of the State

Central Committee acted in contravention of the Plan when they selected the nomination method.

Although the plain meaning of the Plan is decisive alone, the actions of Party officials support

the Plan's plain meaning.

Because the Plan and application of Virginia elections law are not at odds in this case,

there is no burden at all on Plaintiffs' constitutional rights.[8]

### III.  The Court should conclude that, in light of *Miller v. Brown*, the Commonwealth may order a primary after an incumbent's selection of that nomination method.

The Commonwealth does not concede that application of Virginia law in this case

constitutes *any* burden on Plaintiffs' associational rights (*see supra* at 19-21).  In the alternative,

if application of Va. Code § 24.2-509(B) does impose some burden, the Commonwealth is

within its rights to mandate that a primary be used as the nomination method because *Miller v.*

*Brown* ensures that a party will not be forced to associate with voters who do not share its views.

### A.  *Miller v. Brown* removes any concern about forced association.

*Miller v. Brown* held that Virginia's open primary law, Va. Code § 24.2-530, was facially

constitutional but unconstitutional as applied in a case where the incumbent had selected a

primary and the party wanted a nomination process that excludes voters who do not share its

views.  *See* 503 F.3d at 367 (holding § 24.2-530 facially constitutional because "a party is free to

limit its candidate selection process to voters who share its political views" by choosing any of

the other nomination methods available under Virginia law); 503 F.3d at 368-69 (agreeing with

---

[8]  Plaintiffs' Memorandum in Support of the Motion for Preliminary Injunction (docket # 10) focuses solely on the alleged injury of Va. Code § 24.2-509(B) overriding Party choices pursuant to the Plan and does not mention the secondary injury that Va. Code §§ 24.2-516 & 24.2-527 allegedly cause Plaintiff Adams (*see* Complaint ¶ 19).  To the extent Plaintiffs argue that the purported Adams injury provides grounds for injunctive relief, the Court should deny relief for the reasons stated *supra* at 8-9.

the district court's conclusion that § 24.2-530 was unconstitutional as applied in a circumstance where the incumbent's choice forced party officials to conduct a primary open to all voters). Since *Miller*, the Commonwealth has not been confronted with another situation in which an incumbent has chosen a primary and the party seeks a closed primary based on its rules.  In such a situation, the Commonwealth will do all it can to comply with *Miller*.[9]  Therefore, in light of *Miller v. Brown*, application of § 24.2-509(B) poses no burden of forced association through a primary.

> **B.    Absent forced association concerns, any other burden imposed by ordering a primary is justified.**

Plaintiffs' Memorandum complains that there is constitutional injury in Va. Code § 24.2-509(B) "entirely displac[ing] the internal processes by which a political party chooses the method by which it nominates candidates" and "tak[ing] away the right of political parties to determine the method by which they nominate their candidates."  (Docket # 10 at 8.)

The problem for Plaintiffs is that both the Supreme Court and the Fourth Circuit have specifically rejected that claim so long as the nomination method mandated by a State does not result in forced association.  *Jones*, 530 U.S. at 572 (2000) ("a State may require parties to use the primary format for selecting their nominees"); *American Party of Texas v. White*, 415 U.S. 767, 781 (1974) ("It is too plain for argument" that a State "may insist that intraparty competition be settled before the general election by primary election or by party convention"); *Miller*, 503 F.3d at 368 (describing *American Party of Texas v. White* as "holding that states may

---

[9]   The Republican Party of Virginia has not provided the Commonwealth with the Party's requirements for participation in a 2015 primary.  *Cf.* Va. Code § 24.2-545(A) (providing for parties to do so with respect to presidential primaries "at least 90 days before the primary date").  Va. Code § 24.2-545(A) provides further: "The requirements may include, but shall not be limited to, the signing of a pledge by the voter of his intention to support the party's candidate when offering to vote in the primary."

dictate the method by which political parties select their nominees").

States may require political parties to nominate candidates through a primary because primaries promote important state interests in democracy and a fair and orderly electoral process. *See, e.g.*, *Jones*, 530 U.S. at 572 (a State may require a primary "in order to assure that intraparty competition is resolved in a democratic fashion"); *Storer v. Brown*, 415 U.S. 724, 730 (1974) ("there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes").

In cases where Va. Code § 24.2-509(B) results in a primary, such as this case, the above cases are controlling.  It is true that the Commonwealth's interests in voter participation and democracy are insufficient to force a party to associate with non-members, *e.g.*, *Miller*, 503 F.3d at 371, but forced association is not an issue after *Miller*.  Nor have Plaintiffs shown any other severe and unjustified burden on the Party that would result from conducting a primary.

## IV.   Plaintiffs' delay in bringing suit weighs against granting injunctive relief.

Plaintiffs saw the purported conflict between Virginia law and the Party's Plan on which their suit depends as early as the first week of December.  The Complaint describes the Plaintiffs' actions on December 3 and 4, choosing a convention and notifying the Commonwealth of that choice, and the Complaint's exhibits show that Plaintiffs' had already retained counsel at that point.   *See* Complaint ¶¶ 14-15 & Complaint Exs. B & C.  Plaintiffs also sought interpretations of the Party's Plan from the Party's general counsel and were considering litigation as early as the first week of December.  *See* Letter from Patrick McSweeney, General Counsel of the Party, to Plaintiff Adams (December 7, 2014) (responding to questions from Plaintiff Adams regarding certain duties of Legislative District Committees under the Plan and the potential "legal object of a challenge by an incumbent legislator to a decision of a legislative district committee") (copy attached as Exhibit 2), *available at* http://rpv.org/about/general-

counsel-rulings/ (last visited March 19, 2015).

And Plaintiffs could have brought this case much earlier than December. Va. Code § 24.2-214 confirms that the every-four-years cycle of state senatorial elections has existed since at least 1995. Va. Code § 24.2-509(B) has existed in its current form since 1993. *See* http://law.lis.virginia.gov/vacode/title24.2/chapter5/section24.2-509/ (showing 1993 as the last year in which the statute was amended). The Party Plan's limited delegation of authority to Plaintiffs has been in place since at least March 22, 2014. *See* Complaint Ex. A at 1. The purported conflict between Virginia law and the Party Plan regarding who decides the nominated method was fully realized at least as early as March 2014, so Plaintiffs knew or should have known of the purported burdens on their First Amendment rights. Yet Plaintiffs waited to bring suit until the end of February 2015, when state and local preparations to hold a primary were beginning, only four weeks before candidates must file for the primary, and eight weeks before the Commonwealth must have printed and distributed absentee ballots.[10]

"Bringing lawsuits on the eve of pending elections disrupts the electoral process." *Miller v. Brown*, 462 F.3d 312, 320 (4th Cir. 2006). And Plaintiffs have pressed for a hearing and decision within a month after the date of their suit, despite *Miller*'s warning that "[p]roviding only thirty days for briefing, argument, and decision of a novel constitutional question before the courts is troublesome" and without regard for the effects that a "last-minute decision" declaring Virginia law unconstitutional would have on both parties and non-parties to this case. *Id.*

Laches is an affirmative defense to equitable relief that has two elements: "(1) lack of

---

[10]  *See* Va. Code §§ 24.2-507 & 24.2-510 (setting the second Tuesday in June, which is June 9, 2015, as the deadline for general election candidates to be determined); Va. Code § 24.2-522 (primary candidates must file by 75 days before the primary, which is March 26); Va. Code § 24.2-612 (describing the ballot process in April, which culminates in printed absentee ballots being available "not later than 45 days prior to any election," or April 25).

diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Perry v. Judd*, 840 F. Supp. 2d 945, 953 (E.D. Va. 2012), *injunction denied by* 471 Fed. Appx. 219 (4th Cir. 2012). Here, the Complaint and its exhibits establish that Plaintiffs could have brought their lawsuit at least a year ago, in March 2014, and that Plaintiffs were contemplating legal conflict three months ago. Given Plaintiffs' awareness of the facts giving rise to the cause of action in March 2014, waiting until the end of February 2015 to bring suit was inexcusable delay. *See id.*

Plaintiffs' delay prejudices Senator Hanger, Intervenor Moxley, and other candidates. [11] It also causes subtantial administrative uncertainty for the Commonwealth and will impact the election if there is no final decision soon. "Prejudice can be inferred simply from the plaintiff's delay" and "[t]he greater the delay, the less the prejudice required to show laches." *Perry*, 840 F. Supp. 2d at 954. Here, Plaintiffs delayed long enough that preliminary injunctive relief should be denied. *See Maryland Citizens for a Representative General Assembly v. Governor*, 429 F.2d 606, 607, 609 (4th Cir 1970) (upholding a district court's refusal to convene a three-judge court to decide an apportionment challenge filed 13 weeks prior to the candidate filing deadline), *cited in Miller*, 462 F.3d at 320-21.

## CONCLUSION

The Court lacks jurisdiction because the consistency between the Republican Party of Virginia's Plan and Virginia law deprives Plaintiffs of the injury-in-fact and other required elements of standing. Also, Plaintiffs have failed to state a claim upon which relief may be granted because (i) there is no conflict between the Party Plan and application of Virginia

---

[11]   When Plaintiffs finally did bring suit, they failed to name Senator Hanger or other candidates as parties even though candidates are necessary parties under Rule 19. *See supra* at 11-14.

elections law; and (ii) in light of *Miller v. Brown* removing forced association concerns, the Commonwealth has the right to mandate a primary.  The Court should grant the Commonwealth's Rule 12 Motion to Dismiss.

To ensure a complete resolution, the Court should order joinder of Senator Hanger and any other parties with an interest in the subject matter of this action.

Because application of Va. Code § 24.2-509(B) imposes no burden on Plaintiffs' constitutional rights, or because it imposes only the permissible burden of requiring Plaintiffs to choose their nominee by a primary, the Court should conclude that Plaintiffs have not made the required clear showing that they are likely to prevail on the merits.  The Court also should apply laches in light of Plaintiffs' delay in bringing this suit and resulting prejudice.  The Plaintiffs' Motion for Preliminary Injunction should be denied.

Respectfully submitted,

JAMES B. ALCORN
CLARA BELLE WHEELER
SINGLETON MCALLISTER
VIRGINIA DEPARTMENT OF ELECTIONS

By: _____/s/ - Joshua D. Heslinga_____
Counsel

Mark Herring
Attorney General of Virginia

Cynthia E. Hudson
Chief Deputy Attorney General

John W. Daniel II
Deputy Attorney General, Commerce, Environment and Technology Division

Kristina Perry Stoney
Senior Assistant Attorney General, Chief, Financial Law & Government Support Section

Joshua D. Heslinga (VSB # 73036)
Assistant Attorney General

*Attorney for the Virginia State Board of Elections' members in their official capacities*
*and for the Virginia Department of Elections*

Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219
(804) 786-3847
jheslinga@oag.state.va.us

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on March 20, 2015, I am electronically filing the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel and CM/ECF filing users:

Thomas E. Ullrich
Jeffrey R. Adams
WHARTON, ALDHIZER &
WEAVER, PLC
125 S. Augusta St.
Staunton, VA 24401
Telephone: 540-885-0199
Facsimile: 540-213-0390
Email: jadams@wawlaw.com
Email: tullrich@wawlaw.com

John C. Wirth
NELSON, MCPHERSON,
SUMMERS & SANTOS, L.C.
12 N. New St.
Staunton, VA 24401
Telephone: 540-885-0346
Facsimile: 540-885-2039
Email: johnwirth@nmsslc.com

*Counsel for Plaintiffs*

Rick Boyer
BOYER LAW FIRM, PLLC
P.O. Box 10953
Lynchburg, VA 24506
Telephone: 434-401-2093
Facsimile: 434-239-3651
Email: rickboyerlaw@gmail.com

*Counsel for Intervenor Daniel Moxley*

Chris Ashby
ASHBY LAW PLLC
717 Princess Street
Alexandria, Virginia 22314
P: (202) 281-5463
F: (571) 257-0926
E: Chris@Ashby-Law.com

*Counsel for Intervenor Senator Emmett W. Hanger, Jr.*

_____/s/_____
Joshua D. Heslinga (VSB # 73036)
*Attorney for the Virginia State Board of Elections'*
  *members in their official capacities and for the Virginia*
  *Department of Elections*
Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219
(804) 786-3847
fax: (804) 692-1647
jheslinga@oag.state.va.us