IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| **KENNETH H. ADAMS,** *et al.* ) | |
| ) | |
| **Plaintiffs,** ) | |
| v. ) | Case No. 5:15-cv-00012 |
| ) | |
| **JAMES B. ALCORN,** *et al.* ) | |
| ) | |
| **Defendants.** ) | |

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO
### MOXLEY'S MOTION FOR PRELIMINARY INJUNCTION

Defendants James B. Alcorn, Clara Belle Wheeler, and Singleton McAllister, in their official capacities as Chairman, Vice-Chairman, and Secretary, respectively, of the Virginia State Board of Elections, and the Virginia Department of Elections (collectively, the Commonwealth) state as follows in opposition to Intervenor-Plaintiff Daniel Moxley's Motion for Preliminary Injunction (docket # 41).[1]

### INTRODUCTION

Moxley has intervened in this action claiming that the Equal Protection Clause entitles Moxley to an "equal voice" in selection of the nomination method (*see* Moxley Mem., docket # 42, at 8), so Va. Code § 24.2-509(B) is unconstitutional because it privileges Senator Hanger's preference above Moxley's. There are two fundamental problems with Moxley's claim.

First, the Commonwealth has ordered a primary with respect to the Republican state

---

[1] Pursuant to the Court's Order of March 24, 2015 (docket # 37), the Commonwealth incorporates by reference portions of prior filings, as specifically identified below. The Court's Order required the Commonwealth to respond today to Moxley's motion for preliminary injunctive relief, not to his pleading. The Commonwealth expects to move to dismiss Moxley's pleading in the near future and will minimize restatement of arguments. A decision on Moxley's motion need not wait for a motion to dismiss Moxley's pleading to be filed and fully briefed.

1

senatorial nomination at issue, and Moxley has not made, and cannot make, any plausible claim that a state-run primary election is a constitutionally-flawed nomination method. The choice of nomination method does not exclude qualified voters or include voters who are not qualified under state law and Republican Party of Virginia rules. And it is well-settled that primaries are free and fair and have important democratic benefits. Given that the nomination method in the election at issue is fair and does not deny, dilute, or even affect anyone's right to vote, Moxley has failed to meet the Supreme Court's standard for a challenge to an election method.

Second, unlike with respect to voting itself, Moxley has no right to *any* voice in the choice of which nomination method should be used, much less an "equal" one. The Commonwealth has a right to dictate political parties' nomination methods, so long as the Commonwealth does not severely and unjustifiedly burden parties' or voters' constitutional rights. Absent such a state mandate, political parties have the right to determine how to nominate their candidates, including by adopting rules that let incumbents choose the nomination method. Individual political party members, whether candidates or not, have only the rights that state law and party rules give them, and Moxley does not, and cannot, point to any right given to him by law or party rules with respect to the choice of nomination method.

## SUMMARY OF FACTS

The Commonwealth incorporates by reference the Summary of Facts in the Commonwealth's Combined Memorandum (docket # 26), at pp. 3-5, to which the Commonwealth adds the following material facts regarding Moxley and his claim in this case.

Moxley is a candidate for the Republican nomination in the 24th Senatorial District in 2015. (Complaint in Intervention, docket # 40, ¶ 5.) Moxley alleges that he has qualified to be a candidate both at the convention called by Plaintiffs and in the primary ordered by the

Commonwealth after Senator Hanger's designation. *See id.* ¶ 18.

Moxley officially began his campaign for the Republican nomination on December 2, 2014. *See* Exhibits 1 & 2.[2]

Moxley does not allege any impermissible voter exclusion or inclusion, nor any other fundamental unfairness or flaw in a state-run primary as a method of nomination. He alleges only that Va. Code § 24.2-509(B) is unconstitutional because it gives legal effect to the incumbent's designation of nomination method but does not consider Moxley's own preference.

## ISSUES

The Supreme Court has held that States have authority to define how elections will be conducted, including by dictating parties' nomination methods, and requires litigants challenging the fairness of an election method to show a lack of adequate opportunity to access the ballot. A primary promotes democracy and provides a fair and orderly electoral process, and Moxley alleges that he has qualified for the primary ballot. May a candidate block a primary without showing a lack of opportunity for ballot access?

Absent a State mandate, a party may choose its nomination method, including by designating a particular person or body to determine the method. The Republican Party of Virginia has enacted rules that allow the incumbent to determine the nomination method where Virginia law so provides. May a candidate use the Equal Protection Clause to override a nomination method determined in accordance with Party rules?

Laches bars equitable relief where the claimant has delayed inexcusably and caused prejudice. In March 2015, Moxley brought a facial challenge on the grounds that Va. Code § 24.2-509 creates a preferred class in incumbents over all others, especially challenger

---

[2]  Exhibits 1 and 2 are copies of articles from newspaper websites reporting Moxley's campaign announcement. Counsel does not believe the date of his announcement is a disputed fact.

candidates. Moxley began his candidacy on December 2, 2014. Should Moxley receive preliminary injunctive relief despite delaying his claim for months?

## STANDARDS OF REVIEW

The Commonwealth incorporates by reference the Standards of Review "For Preliminary Injunctions" and "For Challenges to Election Laws and Regulations" from the Commonwealth's Combined Memorandum (docket # 26) at pp. 15-17.

**For the Equal Protection Clause**

"In the equal-protection context, a 'challenged classification need only be rationally related to a legitimate state interest unless it violates a fundamental right or is drawn upon a suspect classification such as race, religion, or gender.'" *Ameur v. Gates*, 759 F.3d 317, 327 (4th Cir. 2014), *cert. denied by* 2015 U.S. LEXIS 727 (Jan. 20, 2015).

Rational-basis review is "a 'deferential' standard that asks only whether [the legislature] had a 'reasonable basis for adopting the classification.'" *Id.* at 328; *accord Wilkins v. Gaddy*, 734 F.3d 344, 348 (4th Cir. 2013) (noting that "the fit between the enactment and the public purposes behind it need not be mathematically precise" and that a statute "will pass constitutional muster" under rational-basis review as long as there is "a reasonable basis for adopting the classification, which can include 'rational speculation unsupported by evidence or empirical data'") (citing *FCC v. Beach Communications., Inc.*, 508 U.S. 307, 315 (1993)).

"The rational basis standard thus embodies an idea critical to the continuing vitality of our democracy: that courts are not empowered to 'sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations.'" *Wilkins*, 734 F.3d at 348 (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)).

**ARGUMENT**

I.  **The Commonwealth is entitled to broad deference in regulating elections so long as it does not severely burden constitutional rights, and there is no basis for heightened scrutiny in this case.**

The Commonwealth incorporates Section I of the Argument in its Combined Memorandum (docket # 26) in opposition to Plaintiffs' Motion for Preliminary Injunction, at pp. 17-19, which sets forth the broad authority of States to regulate elections and which discusses key Supreme Court and Fourth Circuit elections case law.

Heightened scrutiny applies if a law discriminates based on a suspect classification or violates a fundamental right. Moxley does not allege that he is part of a protected class, nor that Va. Code § 24.2-509(B) discriminates based on race or another recognized suspect classification. Instead, Moxley seeks strict scrutiny based on § 24.2-509(B)'s alleged effect on the fundamental right to vote. *See* Complaint in Intervention, docket # 40, ¶¶ 11-14; Moxley Mem., docket # 42, at 5-8 ("Where Voting Rights are Denied or Diluted, Strict Scrutiny Applies").

Moxley ignores the Supreme Court's more recent case law regarding elections regulations in favor of three 1960s voting rights cases: *Kramer v. Union Free School Dist. No. 15*, 395 U.S. 621 (1969) (holding that a New York statute limiting eligibility to vote in school district elections to property owners and parents was unconstitutional); *Reynolds v. Sims*, 377 U.S. 533 (1964) (holding that both houses of the Alabama state legislature must be apportioned on a population basis); and *Gray v. Sanders*, 372 US 368, 379-380 (1963) (holding that Georgia could not favor rural voters over urban ones because "Once the geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote -- whatever their race, whatever their sex, whatever their occupation, whatever their income, and wherever their home may be in that geographical unit.").

The voting cases cited by Moxley do not apply in this case, and heightened scrutiny is

inappropriate, because Va. Code § 24.2-509(B) affects only the method of nomination. It has no effect on the right to vote. The body of voters entitled to participate in any Republican nomination method is determined by a combination of state law and Party rules. In light of *Miller v. Brown*, 503 F.3d 360 (4th Cir. 2007), Virginia law no longer mandates that a primary be open to all voters where a party seeks a closed primary based on its rules.[3] And the Republican Party of Virginia's Plan does not vary which Party members are entitled to participate in Party nomination contests based on the method of nomination. *See* Dec. 2014 Plan (Am. Complaint Ex. F, docket # 29-6) at 3 (art. I). Although practical considerations mean that some qualified voters may be able to vote in a primary but unable to travel to and attend a convention, the pool of voters qualified to vote for the Republican nomination in the 24th Senatorial District is the same, and each vote has the same weight, regardless of whether the Party selects its nominee by convention or primary.

Because Va. Code § 24.2-509(B) does not deny, dilute, or affect in any other way which voters may participate in party nomination methods, it has no effect on the right to vote. And given that the statute does not affect a fundamental right or discriminate against a protected class, there is no basis for strict scrutiny.

## II. Moxley's facial challenge is not likely to succeed if there are at least some circumstances in which applying Va. Code § 24.2-509(B) is constitutional.

"[A] plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of

---

[3] A party remains free to accept an open primary after *Miller*. One way that a party may cause an open primary to occur is by failing to provide the party's voter requirements for a closed primary. *Cf.* Va. Code § 24.2-545(A) (presidential primaries conducted under "requirements determined by the political party for participation," which must be certified to and approved by the State Board of Elections and which must be determined 90 days prior to a primary). No one in the Republican Party of Virginia has yet provided the Commonwealth with requirements for 2015 primaries. Primary election day is only 71 days away. Absentee ballots must be printed and mailed within 26 days, and the Commonwealth must ensure that any requirements are both constitutional and practicable for absentee and in-person voting.

circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).[4]

"Facial challenges are disfavored for several reasons," including that they risk "premature interpretation of statutes on the basis of factually barebones records," "run contrary to the fundamental principle of judicial restraint" in constitutional rulings, and "threaten to short circuit the democratic process." *Washington State Grange*, 552 U.S. at 450.

If applying Va. Code § 24.2-509(B) is constitutional in cases like this one, that is "fatal" to a facial challenge to the statute. *Washington State Grange*, 552 U.S. at 457 (citing *Schall v. Martin*, 467 U.S. 253, 264 (1984), for the principle that "a facial challenge fails where 'at least some' constitutional applications exist").

### III. Moxley is not likely to succeed on his novel equal protection theory, especially in a case where an incumbent has designated a primary as the nomination method.

Moxley asks this Court to rule Va. Code § 24.2-509(B), a longstanding election law, unconstitutional based largely upon a dissent by Judge Wilkinson from a denial of rehearing *en*

---

[4] In the First Amendment context, courts also have allowed an "overbreadth" type of challenge, "under which a law may be overturned as impermissibly overbroad because a 'substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'" *Washington State Grange*, 552 U.S. at 449 n.6. Moxley does not bring a First Amendment claim at all, much less an overbreadth challenge. Instead, Moxley contends that Va. Code § 24.2-509(B) is always unconstitutional on equal protection grounds because of its facial classification between incumbents and others. *See* Complaint in Intervention, docket # 40, ¶ 15. There are two other reasons overbreadth is inapplicable. Overbreadth challenges are permitted in order to avoid a chilling effect on "constitutionally protected speech or expression," *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 312 n.4 (4th Cir. 2013), and Moxley has made no clear showing of a chilling effect from applying Va. Code § 24.2-509(B). Indeed, the candidacies of Moxley and the other challengers in the 24th Senatorial District primary would contradict a chilling effect claim. Moreover, Moxley has made no clear showing of "a substantial number of impermissible applications," which is a prerequisite to an overbreadth claim. *Judd*, 718 F.3d at 312 n.4; *accord Washington State Grange*, 552 U.S. at 449 n.6 (courts "generally do not apply the 'strong medicine' of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law").

*banc*. *See* Moxley Mem., docket # 42, at 10-11, 16, 22-24.[5] Judge Wilkinson's equal protection argument in that dissent also contains a dearth of relevant legal precedent. Moxley's claim is not likely to succeed because it fails to meet the Supreme Court's standard for nomination process challenges and because there is no constitutional defect in a state-run primary.

> A. **Moxley has failed to meet the high bar for challenges to nomination processes.**

The Supreme Court has established a rigorous, practical standard for challenges claiming that election procedures are unfair or discriminatory. To succeed, a litigant must show a lack of opportunity to appear on the ballot, and Moxley has not met, and cannot meet, that standard.

In *American Party of Texas v. White*, 415 U.S. 767, 781 (1974), the Supreme Court labeled it "too plain for argument" that states may mandate that a political party use a particular method to select nominees.[6] *American Party of Texas* did not involve a universal primary mandate; instead, Texas law imposed different requirements on different parties.[7] Accordingly, the litigants did not allege a burden on First Amendment rights alone but also claimed that Texas's laws "violate the Equal Protection Clause of the Fourteenth Amendment as invidious

---

[5] Moxley also cites 1960s voting rights cases, which are entirely inapt. *See* § I *supra*, at 5-6.

[6] That holding has been reaffirmed in recent years by both the Supreme Court and the Fourth Circuit. *See N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 203 ("when the State gives the party a role in the election process," such as allowing candidates' party affiliation on the general election ballot, "the State acquires a legitimate governmental interest in ensuring the fairness of the party's nominating process, **enabling it to prescribe what that process must be**") (emphasis added); *Miller*, 503 F.3d at 368 (describing *American Party of Texas v. White* as "holding that states may dictate the method by which political parties select their nominees"); *see also California Democratic Party v. Jones*, 530 U.S. 567, 572 (2000) (quoted *infra* at 10-11).

[7] *See* 415 U.S. at 772-73 (statewide primaries required for "major parties"), 773-74 (parties whose candidate for governor received more than 2% but less than 200,000 votes may use primaries or conventions), 774 (parties who polled less than 2%, such as those who brought the case, required to use conventions and to provide signed petitions if the convention did not evidence the required support), 775 ("unaffiliated nonpartisan or independent candidates" required to qualify by submitting an application or petition with the requisite signatures).

8

discriminations against new or small political parties." 415 U.S. at 780. The Supreme Court responded that appellants' burden to show discrimination "is not satisfied by mere assertions that small parties must proceed by convention when major parties are permitted to choose their candidates by primary election." *Id.* at 781. Merely pointing to disparities in the law was insufficient because the Court was "unwilling to assume" that meeting Texas's requirements "imposes a substantially greater hardship on minority party access to the ballot." *Id.* at 783. The Court rejected the assertion that Texas was "freez[ing] the status quo" and concluded that Texas "affords minority political parties a real and essentially equal opportunity for ballot qualification." *Id.* at 787-88. Because those claiming to be discriminated against had failed to show a real lack of opportunity for ballot access, their challenge to the differing requirements of Texas election law failed.

In *N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196 (2008), the Supreme Court confronted another challenge to an election system, this time based on alleged disparities between candidates. New York required parties to select nominees for Supreme Court Justice through a hybrid system – "at a convention of delegates chosen by party members in a primary election." *Id.* at 198. Candidates unhappy with the system, along with voters who supported those candidates and a public interest group, sued, "contend[ing] that New York's election law burden the rights of challengers seeking to run against candidates favored by party leadership, and deprived voters and candidates of their rights to gain access to the ballot and to associate in choosing their party's candidates." *Id.* at 201. Lower courts granted an injunction requiring a direct primary and held that there was a constitutional right to a "realistic opportunity to participate in [a political party's] nominating process, and to do so free from burdens that are both severe and unnecessary." *Id.* at 202. The Supreme Court reversed, finding "no support in

our precedents" for a claim that the Constitution imposes a requirement that candidates "have a fair chance of prevailing in their parties' candidate-selection process." *Id.* at 204. The Court noted that the litigants could "vote in the election for delegates" and could "run in that election" and that nothing in state law compelled anyone's vote or prohibited a candidate "from attending the convention and seeking to persuade the delegates." *Id.* at 204-05. As for claims that the general election was "uncompetitive," the Court said that competitiveness interests "are well enough protected so long as all candidates have an adequate opportunity to appear on the general-election ballot." *Id.* at 207. The Court declined to "enter the morass" of trying to make elections sufficiently fair or competitive. *Id.* at 209.[8]

The common theme in *American Party of Texas* and *Lopez Torres* is that, unless a litigant can show a real lack of adequate opportunity to access the ballot, courts should not use the Constitution to tinker with state election law to address perceived unfairness in differing treatment of parties or candidates. By his own allegations, Moxley has met the requirements for access to the primary ballot to compete for the Republican nomination. (Complaint in Intervention, docket # 40, ¶ 18.) Moxley does not allege, and cannot allege, the lack of an adequate opportunity to persuade Republican voters to support him. Moxley's claim fails to meet the standard required by the Supreme Court.

**B. Moxley's claim is particularly unlikely to succeed where Va. Code § 24.2-509(B) results in a primary.**

Applying Va. Code § 24.2-509(B) in this case also promotes the very democracy Moxley claims to seek because it results in a primary, with all of a primary's attendant democratic benefits. *See, e.g.*, *California Democratic Party v. Jones*, 530 U.S. 567, 572 (2000) ("a State

---

[8] Two justices wrote in concurrence "to emphasize the distinction between constitutionality and wise policy." *Lopez Torres*, 552 U.S. at 209. A state's election laws need not be the best laws possible, free of deficiencies, or worthy of endorsement to pass constitutional muster. *See id.*

may require parties to use the primary format for selecting their nominees, in order to assure that intraparty competition is resolved in a democratic fashion"). Indeed, the Supreme Court has described primaries as "more favorable to insurgents" than other candidate selection processes. *Lopez Torres*, 552 U.S. at 205. Primaries also meet the State's important interests in a fair and orderly electoral process. *See Storer v. Brown*, 415 U.S. 724, 730 (1974) ("there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes"). And Moxley alleges no fundamental flaw in Virginia's state-run primary process.

There also is a reasonable basis for Va. Code § 24.2-509(B)'s long-standing legislative judgment that ordering a primary after an incumbent's choice benefits democracy, not merely incumbents. The Commonwealth requiring incumbents' agreement for a non-primary "assure[s] those voters who had supported a candidate previously that their majority voice c[an] not be bypassed in succeeding elections by means of intra-party maneuvering without the consent of the person they had elected." 1973 Va. AG LEXIS 373 at 4; 1973-74 Op. Atty Gen. Va. 152, 153. Or, as the Supreme Court stated in *Lopez Torres*, "we have … permitted States to set their faces against 'party bosses' by requiring party-candidate selection through processes more favorable to insurgents, such as primaries." 552 U.S. at 205. The Commonwealth's legislative judgment that giving incumbents a right to designate a primary actually promotes democracy is supported by experience and more than adequate to provide a rational basis for Va. Code § 24.2-509(B).[9]

---

[9] It is true that Va. Code § 24.2-509(B) theoretically allows an incumbent to choose a non-primary method of nomination when party officials prefer a primary, but no party to this case has shown any instance of that theoretical possibility actually happening. (For example, Complaint Ex. E [also Ex. 6 to the Adams Decl., docket # 9-7] shows that, in each case where an incumbent chose a non-primary method, the corresponding party chair concurred.) As this case and *Miller* exemplify, disputes over the method of nomination actually occur when party bosses seek to use non-primary methods to oust an incumbent. The Court need not and should not close its eyes to

*(footnote continued on next page)*

Where applying Va. Code § 24.2-509(B) results in a primary, a fair and democratic process, a challenger who would prefer some other nomination method is not likely to succeed in claiming that the Constitution requires his nomination method preference be considered.

### IV.     Moxley is not likely to succeed in showing that his novel equal protection theory should override holding the Party's choice, in its Plan, to defer to an incumbent's choice of nomination method.

The Commonwealth incorporates by reference pages 6-8 & 19-21 in the Commonwealth's Combined Memorandum (docket # 26) and pages 1-4 in the Commonwealth's Rebuttal Memorandum (docket # 48). The Republican Party of Virginia has chosen, in its Plan, to limit Plaintiffs' right to determine the nomination method to instances in which the Committee is "permitted to do so under Virginia Law," thereby accepting where Virginia law provides for someone else to determine the nomination method. The Republican Party has the right to defer to the incumbent's nomination method choice, regardless of whether § 24.2-509(B) would be constitutional in a case where it conflicted with Party rules.

Because application of Va. Code § 24.2-509(B) in this case is consistent with Party rules, it is inescapable that Moxley seeks to use his novel equal protection theory to override the well-established First Amendment rights of the Party to choose how to govern itself and select its candidates. *See California Democratic Party*, 530 U.S. at 575 (reaffirming "the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party 'selects a standard bearer who best represents the party's ideologies and preferences'"). Moxley has failed to show that his preference should override the Party's exercise of its rights. Nor is there any reason to believe that the Supreme Court is ready to

---

that reality when ruling on the constitutionality of Va. Code § 24.2-509(B).

The Commonwealth's general administrative interests related to elections also are sufficient to sustain § 24.2-509(B) under rational basis review. The subsection creates an easily-administered system for choosing between permissible nomination methods.

discard *Lopez Torres* and other precedent in order to promote equality of participation in the political process over First Amendment rights.[10]

**V.      Moxley has shown no harm, much less irreparable harm.**

Although likelihood of success on the merits is often the predominant factor in whether to grant preliminary injunctive relief on a constitutional claim (*see* the Commonwealth's Combined Memorandum, docket # 26, at 15-16), Moxley's request for preliminary injunctive relief is also defective because Moxley has shown no harm at all from Va. Code § 24.2-509(B), much less irreparable harm.

Neither in his Complaint in Intervention nor in his preliminary injunction filings does Moxley provide any evidence, or even allegations, that conducting a primary harms him. Moxley's claims of harm rest on speculative insinuations that a primary must somehow be to his disadvantage.  *See* Moxley Mem., docket # 42, at 12 ("Clearly, Hanger believes a primary is in his best interests."); *id.* at 7 & n.7 (citing a *Roanoke Times* editorial for what "is often believed" about who votes in various nomination methods and, "arguably," about voters' supposed level of commitment).  Just as the Supreme Court was "unwilling to assume" that meeting Texas's varying requirements "imposes a substantially greater hardship on minority party access to the ballot," *American Party of Texas*, 415 U.S. at 783, this Court should not halt a primary election based on mere assumptions and insinuations that a primary somehow disadvantages Moxley.

It is uncontested that Moxley qualifies for the primary ballot, and he has a free and fair opportunity to persuade Republican voters to support him.  Therefore Moxley has not shown that he is likely to suffer any irreparable harm from the Commonwealth ordering a primary after

---

[10]   *Cf. Buckley v. Valeo*, 424 U.S. 1, 48-49 (1976) ("[T]he concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment"), *quoted in Citizens United v. FEC*, 558 U.S. 310, 349-50 (2010).

Senator Hanger's designation. A preliminary injunction may not issue unless Moxley has made such a showing. *See, e.g.*, *League of Women Voters of N.C. v. State of N.C.*, 769 F.3d 224, 236 (4th Cir. 2014) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

It might be suggested that the statute giving the nomination method choice to someone else, with no voice for Moxley, is his injury. There can be no injury in denying Moxley something to which he never had a right in the first place, and Moxley had no right under either state law or the Party's Plan to a voice in choosing the nomination method. But leaving that aside, accepting exclusion from the choice as Moxley's injury would make Moxley's argument incoherent. Moxley admits that if a primary resulted from the preferences of the Plaintiff Committee, rather than Senator Hanger, Moxley "would have had no legal claim to any other method of nomination," Moxley would be "uninjured," and "[t]here would be no equal protection violation." (Moxley Mem., docket # 42, at 19.) Moxley does not explain why it is impermissible for Moxley to have no voice if Senator Hanger designates the nomination method but permissible for Moxley to have no voice if the Plaintiff Committee makes the exact same determination. Given Moxley's concession that it is constitutionally permissible for him to be excluded from the nomination method choice in some circumstances, merely being excluded cannot be sufficent harm to support his facial challenge. *See* § II *supra*, at 6-7.

## VI.   Moxley's delay weighs against granting preliminary injunctive relief.

The Commonwealth incorporates Section IV of the Argument in its Combined Memorandum in opposition to Plaintiffs' Motion for Preliminary Injunction, at pp. 23-25, discussing the doctrine of laches.

The elements of Moxley's claim were present in early December 2014. Moxley having officially begun his candidacy on December 2 (*see* Exhibits 1 & 2), the alleged discrimination between Senator Hanger and Moxley was fully realized no later than that point. Arguably

Moxley could have brought his claim even before his candidacy, given his contention that Va. Code § 24.2-509(B) "invidiously discriminates" not just against challenger candidates but also "against all other citizens of the district generally."  (Moxley Mem., docket # 42, at 2.)

Moxley argues his claim could not have been brought until after the Plaintiff Committee's call for a convention on January 28, 2015, or Senator Hanger's designation of a primary on February 24, 2015.  But Moxley is not bringing an as applied challenge, so the particular circumstances of this case – the Committee's and Senator Hanger's nomination method decisions – are not a necessary part of Moxley's claim, which alleges facial unconstitutionality in the statute giving legal effect to an incumbent's choice but not Moxley's.

Moxley waited more than three months to bring his claim, an unjustified delay that has the same harmful effects as Plaintiffs' unjustified delay and which is long enough to warrant denying preliminary injunctive relief.  For the same reasons as previously briefed regarding Plaintiffs therefore, laches bars Moxley's request for preliminary injunctive relief.

## CONCLUSION

The Court should conclude that Moxley has not made the required clear showing either that he is likely to prevail on the merits or that he will be irreparably harmed without preliminary injunctive relief.  The Court also should apply the doctrine of laches.  Moxley's Motion for Preliminary Injunction should be denied.

Respectfully submitted,

JAMES B. ALCORN
CLARA BELLE WHEELER
SINGLETON MCALLISTER
VIRGINIA DEPARTMENT OF ELECTIONS

By:     /s/ - Joshua D. Heslinga
              Counsel

15

Mark Herring
Attorney General of Virginia

Cynthia E. Hudson
Chief Deputy Attorney General

John W. Daniel II
Deputy Attorney General, Commerce, Environment and Technology Division

Kristina Perry Stoney
Senior Assistant Attorney General, Chief, Financial Law & Government Support Section

Joshua D. Heslinga (VSB # 73036)
Assistant Attorney General
*Attorney for the Virginia State Board of Elections' members in their official capacities
 and for the Virginia Department of Elections*
Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219
(804) 786-3847
jheslinga@oag.state.va.us

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on March 30, 2015, I am electronically filing the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel and CM/ECF filing users:

Thomas E. Ullrich
Jeffrey R. Adams
WHARTON, ALDHIZER &
WEAVER, PLC
125 S. Augusta St.
Staunton, VA 24401
Telephone: 540-885-0199
Facsimile: 540-213-0390
Email: jadams@wawlaw.com
Email: tullrich@wawlaw.com

John C. Wirth
NELSON, MCPHERSON,
SUMMERS & SANTOS, L.C.
12 N. New St.
Staunton, VA 24401
Telephone: 540-885-0346
Facsimile: 540-885-2039
Email: johnwirth@nmsslc.com

*Counsel for Plaintiffs*

Rick Boyer
BOYER LAW FIRM, PLLC
P.O. Box 10953
Lynchburg, VA 24506
Telephone: 434-401-2093
Facsimile: 434-239-3651
Email: rickboyerlaw@gmail.com

*Counsel for Intervenor Daniel Moxley*

Chris Ashby
ASHBY LAW PLLC
717 Princess Street
Alexandria, Virginia 22314
P: (202) 281-5463
F: (571) 257-0926
E: Chris@Ashby-Law.com

*Counsel for Intervenor Senator Emmett W. Hanger, Jr.*

　　　　　　　　　/s/
Joshua D. Heslinga (VSB # 73036)
*Attorney for the Virginia State Board of Elections'
  members in their official capacities and for the Virginia
  Department of Elections*
Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219
(804) 786-3847
fax: (804) 692-1647
jheslinga@oag.state.va.us