IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| KENNETH H. ADAMS and 24TH SENATORIAL DISTRICT REPUBLICAN COMMITTEE, ) ) ) | |
| Plaintiffs, ) | |
| ) | |
| and ) | |
| ) | |
| DANIEL MOXLEY, ) | |
| Intervenor-Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 5:15cv00012 |
| ) | |
| JAMES B. ALCORN, CLARA BELLE WHEELER, SINGLETON McALLISTER, and VIRGINIA DEPARTMENT OF ELECTIONS, ) ) ) ) | By: Elizabeth K. Dillon United States District Judge |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| SEN. EMMETT W. HANGER, JR., ) | |
| Intervenor-Defendant. ) | |

## MEMORANDUM OPINION

This lawsuit involves constitutional challenges to a portion of a Virginia election statute, Section 24.2-509(B) of the Virginia Code, commonly referred to as the Incumbent Protection Act ("the Act").[1]  The Act provides that if there is only one incumbent office-holder in a General Assembly district, that incumbent may select the nominating method by which his political party's candidate for his seat will be chosen.  The original plaintiffs are the 24th Senatorial District Republican Committee, which is a local committee of the Republican Party of Virginia ("RPV" or "the Party"), and its chairman, Kenneth H. Adams (collectively, "the Committee").

---

[1] Although not the statute's official title, the Fourth Circuit has noted and used this name to refer to Section 24.2-509(B), Marshall v. Meadows, 105 F.3d 904, 905 n.1 (4th Cir. 1997), and this court does also.

The Committee's amended complaint asserts an as-applied challenge to the Act, contending that it unconstitutionally infringes on the plaintiffs' First Amendment rights to free association. The Committee names as defendants the Virginia Department of Elections and various officials with the Virginia State Board of Elections (collectively, "the Commonwealth").

In addition to the original parties in the lawsuit, the court has granted leave for two parties to intervene. The first is intervenor-defendant Senator Emmett W. Hanger, a member of the RPV and the incumbent office-holder for the 24th Senate District seat. As described in more detail herein, Hanger has relied on the authority granted him in the Act and has designated a primary as the method for nominating the Republican candidate for his seat in the 2015 election. He made that designation after the Committee had called for a convention to be used as the method of nomination.

The second party is intervenor-plaintiff Daniel Moxley, who (like Hanger) seeks the nomination of the RPV for the 24th District senate seat. Moxley has filed a separate intervenor complaint alleging that the Act violates his constitutional rights under the Equal Protection Clause of the United States Constitution and is invalid on its face, because it confers on an incumbent an electoral advantage over challengers in his own party, i.e., the unfettered ability to choose the nominating method for the party's candidate. He argues that the Act "invidiously discriminat[es] against [him] and all other challengers to Hanger[,]" that it "serves no compelling state interest, and is not narrowly tailored to serve any such interest." Dkt. No. 40, Moxley Compl. at ¶¶ 21, 22.

Pending before the court are: (1) separate motions for preliminary injunction filed by the Committee and Moxley; (2) separate motions to dismiss the Committee's complaint filed by the Commonwealth and Hanger; (3) a motion by the Commonwealth to dismiss Moxley's intervenor

2

complaint; and (4) defendants' motion for joinder. In their motions to dismiss, defendants argue that both complaints are subject to dismissal because the plaintiffs have failed to establish standing.

As discussed in more detail below, the court concludes that both the Committee and Moxley have failed to establish constitutional standing in this case. As a result, this court does not have jurisdiction over their claims. The court will therefore deny both the Committee's and Moxley's motions for preliminary injunction and grant the defendants' motions to dismiss the complaints.[2]

**I.    BACKGROUND**

At the March 23, 2015 hearing before the court, the parties confirmed that there are no factual disputes that affect the merits of the case at this stage and that the parties disagree solely over issues of law. As noted, Hanger is the only incumbent senator in the 24th Senate District of Virginia and is a member of the RPV. Dkt. No. 29, Am. Compl. at ¶ 16.[3] The RPV, a voluntary association, has a Plan of Organization ("the Plan") that is a contract governing its members and operation. The Plan includes a delegation of authority to the Committee to determine the method of nomination for candidates seeking the Republican nomination for the 24th Senate District. Dkt. No. 29, Am. Compl. at ¶¶ 3, 13 and Ex F thereto. Specifically, Article V of the Plan (titled "Legislative District Committee"), subsection D (titled "Duties"), provides in pertinent part:

> The Legislative District Committee shall determine whether
> candidates for Legislative District public office shall be nominated

---

[2] Additionally, in light of the court's prior ruling allowing Moxley and Hanger to intervene and its rulings herein, the court will deny defendants' motion for joinder as moot.

[3] The 24th Senate District includes the cities of Staunton and Waynesboro, the counties of Augusta, Greene, Madison, and parts of Culpeper and Rockingham counties. All of these geographic areas—and hence the entire district—lie within the geographic boundaries of this court. See 28 U.S.C. § 127(b).

> by Mass Meeting, Party Canvass, Convention or Primary, where permitted to do so under Virginia Law.

Dkt. No. 29-6 at 13, Plan at Art. V, § D(1)(a). As discussed herein in relation to standing, the parties disagree over whether the foregoing delegation to the Committee includes the authority to select a nomination method where the incumbent has designated a method pursuant to the Act or only delegates such authority when the incumbent has not made such a designation.

Virginia law generally provides that the nomination method for political candidates shall be determined by the political parties. The Act is described as an exception to that rule. Virginia Code § 24.2-509(A) provides, "[t]he duly constituted authorities of the political party for the district, county, city, or town in which any other office is to be filled shall have the right to determine the method by which a party nomination for that office shall be made." The provision challenged here is contained in subsection (B), and states in pertinent part, "Notwithstanding Section (A), . . . [a] party shall nominate its candidate for election for a General Assembly district where there is only one incumbent of that party for the district by the method designated by that incumbent, or absent any designation by him by the method of nomination determined by the party." Va. Code § 24.2-509(B).[4] Thus, the provision sets up a scheme whereby it is

---

[4] In its entirety, Section 24.2-509 provides as follows:

> A. The duly constituted authorities of the state political party shall have the right to determine the method by which a party nomination for a member of the United States Senate or for any statewide office shall be made. <u>The duly constituted authorities of the political party for the district, county, city, or town in which any other office is to be filled shall have the right to determine the method by which a party nomination for that office shall be made.</u>
>
> B. <u>Notwithstanding subsection A</u>, the following provisions shall apply to the determination of the method of making party nominations. <u>A party shall nominate its candidate for election for a General Assembly district where there is only one incumbent of that party for the district by the method designated by that incumbent, or absent any designation by him by the method of nomination determined by the party</u>. A party shall nominate its candidates for election for a General Assembly district where there is more than one incumbent of that party

(cont. on next page)

possible that the incumbent could select one method of nomination, such as a primary, in contradiction of the local committee's desire for a different method to determine the party's candidate.[5]  That is what has occurred here.

In December 2014, the Committee adopted a resolution designating a convention as the means of nominating the Republican candidate for the 24th Senate District for 2015 and informed the Commonwealth of that action on December 4, 2014.  Dkt. No. 29, Am. Compl., ¶ 15 at Exs. B & C.  After making suitable arrangements for a location, Adams issued a Call for the convention on February 10, 2015, setting it for April 25, 2015.  See Dkt. No. 32, Pls.' Reply to Defs.' Mot. Dismiss, at 21; Dkt. No. 9-4, Adams Decl. at Ex. 3.  Then, on February 23, 2015, Senator Hanger, pursuant to Section 24.2-509(B), provided notice to the Commonwealth and to

---

(cont.)
> for the district by a primary unless all the incumbents consent to a different method of nomination. A party, whose candidate at the immediately preceding election for a particular office other than the General Assembly (i) was nominated by a primary or filed for a primary but was not opposed and (ii) was elected at the general election, shall nominate a candidate for the next election for that office by a primary unless all incumbents of that party for that office consent to a different method.
>
> <u>When, under any of the foregoing provisions, no incumbents offer as candidates for reelection to the same office, the method of nomination shall be determined by the political party.</u>
>
> For the purposes of this subsection, any officeholder who offers for reelection to the same office shall be deemed an incumbent notwithstanding that the district which he represents differs in part from that for which he offers for election

Va. Code § 24.2-509 (emphasis added).

[5]  As the Fourth Circuit has explained,

> Virginia allows nominations of candidates not only by a primary—which is conducted and funded by the state—but also "by methods other than a primary." Va. Code Ann. § 24.2-510 (2006).  Such other methods, which are conducted and funded by the party, include (but are not limited to) a party convention, see Va. Code Ann. § 24.2-508(ii) (2006); a mass meeting, also known as a "caucus"; and a party canvass or unassembled caucus, also called a "firehouse primary."

Miller v. Brown, 503 F.3d 360, 362 (4th Cir. 2007).

5

the Committee that he was designating a primary as the method of nomination for the Republican candidate for his seat for the 2015 election. Dkt. No. 29, Am. Compl. at ¶ 16 and Ex. D.

The Commonwealth has indicated that it intends to follow Hanger's designation and hold a primary to determine the Republican candidate. Dkt. No. 49, Defs.' Mem. Opp. to Moxley's Mot. for Prelim. Inj., at 1-2; see also Dkt. No. 9-8 at 1, Adams Decl. at Ex. 7 (document signed by Gary W. Fox of the Virginia State Bar of Elections, in which he states that a Republican Primary has been called for the 24th Senate District, and that it will proceed unless only "one candidate qualif[ies] for the primary ballot."). In their filings, the Commonwealth acknowledges, consistent with the Fourth Circuit's decision in Miller v. Brown, 503 F.3d 360 (4th Cir. 2007) ("Miller II"),[6] that it cannot require the RPV to hold an open primary and that "it will do all it can to comply with Miller [II]." See Dkt. No. 26, Defs.' Mem. Supp. Mot. Dismiss, at 22 (noting this is the first instance since Miller II in which an incumbent has chosen a primary and the party "seeks a closed primary based on its rules"). This effectively means that the RPV Plan shall govern who may participate in any primary and that this will not be an open primary.[7] See Dkt. No. 54, Transcript of March 23, 2015 Hearing ("Hearing Tr.") at 23.

---

[6] There were a number of different decisions issued in the Miller case, both by the district court and by the Fourth Circuit. The court will use the following nomenclature to refer to the Fourth Circuit cases. Miller I refers to the Fourth Circuit's decision addressing issues of standing. See Miller v. Brown, 462 F.3d 312 (4th Cir. 2006). Miller II refers to the Fourth Circuit's decision affirming the district court's grant of summary judgment and holding that Virginia's open primary statute was not facially unconstitutional, but was unconstitutional as applied to the plaintiffs. See Miller v. Brown, 503 F.3d 360 (4th Cir. 2007). Miller III refers to Judge Wilkinson's dissent from the denial of the petition for rehearing en banc. See Miller v. Cunningham, 512 F.3d 98 (4th Cir. 2007) (Wilkinson, J., dissenting from denial of rehearing).

[7] In its filings, however, the Commonwealth has also alluded twice to the fact that the RPV has not timely provided the Commonwealth with the Party's requirements for participation in a 2015 primary. Dkt. No. 49 at 6 n.3; Dkt. No. 26 at 22 n.9. In its latest filing, the Commonwealth suggests that the RPV "may cause an open primary to occur . . . by failing to provide the party's voter requirements for a closed primary. Dkt. No. 49 at 6 n.3 (citing Va. Code § 24.2-545(A), which on its face only applies to presidential primaries). It therefore appears unclear at this juncture whether the Commonwealth intends to hold an open primary or not.

Based on the Commonwealth's representation, the parties are in agreement that the universe of voters who will be permitted to vote for the Republican nominee for the seat is the same pool of voters, regardless of whether a convention or a primary is the voting method. Hearing Tr. at 24, 35, 77. That is, the Plan directs that the same qualifications will permit a voter to participate in the RPV's conventions and primaries.[8] Dkt. No. 29-6 at 3, Plan at Art. I, § A(1).

The Committee acknowledges that it is not being forced to allow persons with whom it does not want to associate to vote in any primary. Hearing Tr. at 23-24. But it contends that the Act's application here nonetheless burdens its associational rights, as well as the rights of the RPV and its members. Cf. Dkt. No. 32, Pls.' Reply. to Defs.' Mot. to Dismiss, at 11-12 (Committee arguing that the "First and Fourteenth Amendments protect how parties and their members associate, as well as with whom they associate").

The Committee's principal claim is that the Act unconstitutionally burdens its associational rights because it takes away from the Party the decision of what method of nomination will be used to select its candidate and allows the incumbent the sole authority to decide the method. Dkt. No. 29, Am. Compl. at ¶¶ 1, 12, 22, 24-26.[9]

The Committee requests a declaration that the Act is an "unconstitutional violation of the First and Fourteenth Amendments" to the United States Constitution, asks that the court issue "a

---

[8] As a practical matter, there may be some differences in the universe of voters willing and able to attend a convention. See Dkt. No. 49, Defs.' Mem. Opp. to Moxley's Mot. for Prelim. Inj., at 6 (the Commonwealth noting that "practical considerations mean that some qualified voters may be able to vote in a primary but [be] unable to travel to and attend a convention"). For example, defendants contend that military personnel stationed overseas would be unlikely to attend a convention, but could vote in the primary via absentee ballots. Hearing Tr. at 35. The Plan has a number of special provisions in effect for military members, however, so that they may participate in conventions, even without being physically present. See, e.g., Dkt. No. 29-6 at 23, Plan at Art. VIII, § H(7).

[9] The complaint asserts a related claim that two other provisions, Virginia Code §§ 24.2-516 and 24.2-527, "obligate Adams, as Chairman of the Committee, to certify that a primary has been selected as the manner of determining the Republican nominee . . . in contravention of the terms of the Plan, and therefore, the associative rights of Adams, the Committee and the Party." Dkt. No. 29, Am. Compl. at ¶ 19.

preliminary and thereafter a permanent injunction prohibiting defendants from implementing a primary election to determine the Republican nomination for Virginia Senate District 24 for the 2015 general election cycle," and asks that the court "declare that the Republican nomination for Virginia Senate District 24 for the 2015 general election cycle shall be determined by a convention." Dkt. No 29, Am. Compl. at 9 ("Relief Requested" at ¶¶ A, C, D). It also seeks costs and attorneys' fees pursuant to 42 U.S.C. § 1988. Id. at ¶ F.

In Moxley's intervenor complaint, he alleges that he is a registered voter in the 24th Senate District and also seeks the Republican Party's nomination for the district's senate seat. He alleges that he has complied with all pre-filing requirements to be a candidate at the convention that the Committee has called and that he otherwise meets the requirements for candidacy. He challenges the constitutionality of the Act, arguing that it empowers the incumbent "to impose his choice of renomination upon the party unilaterally," rendering "the desires of the party and any challenger candidates relative to the nomination process [of] no force." Dkt. No. 40, Moxley Compl. at ¶ 15. He contends that "[t]his facial discrimination on behalf of incumbent legislators constitutes invidious discrimination" and implicates his right to equal protection of the laws under the Fourteenth Amendment. Id. He claims standing based on the fact that he is both a citizen and registered voter of the legislative district and because he is a candidate with "no voice in his nomination method."[10]

---

[10] Throughout his filings, Moxley relies heavily on Judge Wilkinson's dissenting opinion in Miller III, in which Judge Wilkinson offered his opinion that the Act is facially unconstitutional on several grounds, an issue that the Miller II panel did not reach. See generally Miller v. Cunningham, 512 F.3d 98 (4th Cir. 2007) (Wilkinson, J., dissenting from denial of rehearing).

## II. DISCUSSION

Defendants seek dismissal of the plaintiffs' complaints, as amended, pursuant to Fed. R. Civ. P. 12(b)(1), because the plaintiffs lack standing, leaving this court without jurisdiction.[11] Cf. Marshall v. Meadows, 105 F.3d 904, 906 (4th Cir. 1997) (standing is an integral component of the jurisdictional limitation that federal courts decide only a "case or controversy"). The Fourth Circuit explained and summarized the doctrine of constitutional standing in Miller I:

> There are three components of constitutional standing: (1) the plaintiff must allege that he or she suffered an actual or threatened injury that is not conjectural or hypothetical[;] (2) the injury must be fairly traceable to the challenged conduct; and (3) a favorable decision must be likely to redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).

Miller I, 462 F.3d at 316. The plaintiffs in this case have the "burden of establishing standing." See Miller I, 462 F.3d at 316 (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990)).

Whether the plaintiffs have standing depends on whether only the Act, or also the Plan, allows the incumbent to select the method of nomination. If the "alleged injury is caused by a voluntary choice made by the Virginia Republican party and not the [statute], the plaintiffs have not established causation," and have not shown that any injury is redressable by striking down the statute. Marshall, 105 F.3d at 906-07. The determination of whether the Party's Plan allows the incumbent to select the method turns on the proper interpretation of the following provision of the Plan, which discusses the duties of a legislative district committee ("LDC"):

> The Legislative District Committee shall determine whether candidates for Legislative District public office shall be nominated by Mass Meeting, Party Canvass, Convention or Primary, <u>where permitted to do so under Virginia law.</u>

---

[11] The discussion on standing is couched primarily in terms of the Committee's standing, but it applies with equal force to the issue of whether Moxley has standing. That is, the court concludes that any injury to Moxley is not caused by the Act or redressable by this court. In light of this, his complaint, too, is dismissed.

Dkt. No. 29-6 at 13, Plan at Art. V, § D(1)(a) (emphasis added).

Defendants argue that the "plain meaning" of the provision is that the LDC only has authority to determine the method of nomination if permitted to do so under Virginia law. Where Virginia law allows selection of a method by the incumbent, the Plan does not confer authority to the LDC at all. See Dkt. No. 26, Defs.' Mem. Supp. Mot. Dismiss, at 7 (citing Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 624 (4th Cir. 1999), for the "well-established principle that 'In interpreting a contract, a court should … give meaning to every clause where possible.'"). According to the Commonwealth and Hanger, then, the Plan does not contradict Virginia law or the Act, but instead embraces and adopts the Act. The Plan gives the authority to choose the nomination method to the LDC only where Virginia law permits. In this case, of course, Virginia law (i.e., the Act) does not so permit.

Plaintiffs counter that the provision's general reference to "Virginia law" cannot be read as a specific incorporation of Section 24.2-509(B). That is, if the drafters of the contract had intended to incorporate Section 509(B), they could have done so much more specifically and directly. If the Plan had expressly adopted Section 509(B) or if, for example, the Plan said the incumbent may select the method of nomination, plaintiffs agree that there would not be a violation of their associational rights because there would have been no conflict between the Plan and the Act. See Hearing Tr. at 25.

The Committee's proffered interpretation is that the language "where permitted by Virginia law" simply "anticipates that conflicts will arise between Virginia election law and the Plan and it confirms that the Party will obey all valid Virginia laws." Dkt. No. 32, Pls.' Reply to Defs.' Mot. Dismiss, at 7. Relatedly, plaintiffs assert that "Virginia law," as referenced in the Plan, encompasses not only the Code of Virginia, but also the United States Constitution.

10

According to plaintiffs, whether or not the LDC "is permitted" under Virginia law to do something requires the court to determine whether the Act is constitutional because unconstitutional laws are void. Id. at 6-7 (citing to Marbury v. Madison, 5 U.S. 137, 180 (1803)); Dkt. No. 33, Moxley's Resp. Opp. to Mot. Dismiss, at 5 (Moxley citing Marbury).

To determine whose interpretation is correct, and what authority the Party has delegated to the Committee, the court must look first to the plain meaning of the Plan language since the members of a party "speak[] through their rules." See Democratic Party of the U.S. v. Wisconsin, 450 U.S. 107, 122 (1981); see Dkt. No. 10, Pls.' Mem. Supp. Mot. Prelim. Inj., at 3 (the Committee acknowledges that "the Plan is the Party's definitive statement on any matter it addresses"). No party disputes that the Plan should be interpreted as a contract between the members and interpreted using ordinary contract principles. See Gottlieb v. Econ. Stores, Inc., 102 S.E.2d 345, 351 (Va. 1958) ("The constitution and by-laws adopted by a voluntary association constitutes a contract between the members, which, if not immoral or contrary to public policy, or the law, will be enforced by the courts.") (citation omitted).

Virginia adheres to well-settled principles of contract interpretation:

> It is axiomatic that when the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. Words that the parties used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.

TravCo Ins. Co. v. Ward, 736 S.E.2d 321, 325 (Va. 2012) (internal citations and quotation omitted).

Applying these principles to the disputed provision here, the court concludes that defendants' construction is the more reasonable one for several reasons. First, while the phrase

"where permitted to do so under Virginia law" is general in nature and does not specifically address the Act, it appears only in the section assigning duties to the LDCs. There are a number of other similar delegations of authority to other Party committees, but none of these limit the power given to committees or include the language "where permitted to do so under Virginia law." See, e.g., Dkt. No. 29-6 at 8, Plan at Art. III, § D(1)(b) (the State Central Committee "shall determine whether candidates for statewide public office shall be nominated by Convention, Party Canvass or Primary."); id. at 12, Art. IV, § D(1)(a) (the Congressional District Committee "shall determine whether candidates for District public office shall be nominated by Convention, Party Canvass or Primary"); id. at 15, Art. VI, § D(1)(a) (the "Unit Committee shall determine whether candidates for local and constitutional public offices shall be nominated by Mass Meeting, Party Canvass, Convention, or Primary . . .").

Under basic contract principles, the drafters' inclusion of the additional language in the LDC provision, but not in the other provisions, must be attributed to a deliberate choice and given meaning. See Smith Barney, Inc. v. Critical Health Sys., 212 F.3d 858, 861 (4th Cir. 2000) (applying, in contract case, expressio unius est exclusio alterius, which states that where particular language appears in one section, but is omitted in another, the omission is deemed intentional); cf. Clark v. Absolute Collection Serv., Inc., 741 F.3d 487, 491 (4th Cir. 2014) (describing principle in statutory context). Particularly given the history of cases regarding the Incumbent Protection Act and the Open Primary Law, the Party was aware of these provisions of Virginia election law. Its inclusion of the phrase "where permitted to do so under Virginia law," only with regard to the LDC duties, is best interpreted as the Party deferring to the Act, because that is the interpretation that gives those words their normal, ordinary meaning. See TravCo Ins. Co., 736 S.E.2d at 325.

Plaintiffs argue, however, that the language was included there simply to ensure that, to the extent there was a conflict between the law and what the Committee wanted, the Plan would follow the law.  Essentially, plaintiffs' interpretation is that the LDC is permitted to select the method unless a valid, constitutional law does not allow them to do so.  But that is not what the provision says and that is not its plain meaning.

Plaintiffs' contention is also belied by the fact that, in another portion of the Plan, its drafters showed that they knew how to include a restriction where a legal challenge might arise. Specifically, in defining a "primary," the Plan states that a "'[p]rimary is as defined in and subject to the Election Laws of the Commonwealth of Virginia, except to the extent that any provisions of such laws conflict with this Plan, infringe the right to freedom of association, or are otherwise invalid." Dkt. No. 29-6 at 5, Plan at Art. II, ¶ 24.  Had the RPV wanted to express that it would follow the Act, but only insofar as it did not infringe on the Party's associational rights, it could have done so.  It did not.  Again, the inclusion of such language in one place, but not in the portion of the Plan conferring duties on the LDC, supports defendants' construction of the Plan.  Cf. Smith Barney, Inc., 212 F.3d at 861.  Accordingly, plaintiffs' contention that the language "where permitted to do so under Virginia law" is meant to begrudgingly accept or acknowledge the Act only if it is valid and reserve its right to challenge it as unconstitutional is not supported by the text of the provision or the Plan as a whole.  Instead, the provision simply provides a delegation of authority that is limited in scope, i.e., the committee gets to choose the method where it is permitted to do so under Virginia law.

The Marshall case also supports the court's conclusion.  105 F.3d 904.  Marshall involved the intersection of the Incumbent Protection Act and the Open Primary Law, Virginia Code § 24.2-530. There, Senator John Warner, as an incumbent, selected a primary and the

Central Committee of the Republican Party of Virginia adopted a primary with no indication that it was doing so "pursuant to the dictates of the Incumbent Protection Act" and with no indication that it would have opted for a closed primary if it could have.[12]  105 F.3d at 905.  At the same time it selected a primary, the Central Committee also rejected a proposed amendment to the Plan expressing a preference for a convention had the Incumbent Protection Act not provided for a primary.  Id.

The Marshall court concluded that the plaintiffs lacked standing to challenge the Open Primary Law because the law was not the cause of the plaintiffs' injury; rather, the party's own decision was.  It explained: "Because the alleged injury is caused by a voluntary choice made by the Virginia Republican Party and not the Open Primary Law, the plaintiffs have not established causation."  Id. at 906; see also Marchioro v. Chaney, 442 U.S. 191, 199 (1979) ("[T]here can be no complaint that the party's right to govern itself has been substantially burdened by statute when the source of the complaint is the party's own decision . . . .").

The Committee and Moxley argue that Marshall is distinguishable on several grounds, but primarily because there was no allegation there that the defendants had interfered with the Party's choice of its method of nomination and no dispute over the interpretation of a provision in the Plan.  These factual distinctions, however, do not vitiate Marshall's main holding, which is that where an injury is caused not by a statute, but by a Party's voluntary choice, the requisite causation and redressability for standing do not exist.  Here, the court concludes that, once Hanger selected a primary, per the terms of the Plan, the Committee had no authority to select a different nomination method.  Thus, as in Marshall, it is the Party's action (i.e., its Plan) that is the source of the injury, not the challenged statute.

---

[12] Later, the Party amended its Plan to specifically express that any primaries held should be closed primaries.  Miller II, 503 F.3d at 362.

It is also worth noting that, although the Committee has asserted a claim and states that its selection of a convention "remains the Party's last word on this matter[,]" the Plan states that the Party's State Central Committee has "final authority" within the RPV for interpretation of the Plan, see Dkt. No. 29-6 at 26-27, Plan at Art. X, §§ (A)(3) & (C)). The State Central Committee and the RPV are not parties to this case and their interpretation of the Plan is unknown.[13] While a local committee can have standing to bring suit where it is attempting to enforce the plain terms of the state Plan, see Miller I, the court concludes that the Plan does not confer the authority on the Committee to select a method in the circumstances here. Thus, its "injury," if any, is not caused by the Act, but by the limited delegation in the Plan itself.

To summarize, the Plan provision limits the authority of the LDC to select a method of nomination only "where permitted to do so under Virginia law," with obvious knowledge of the relevant Virginia law. The Plan also intentionally excludes any mention of conflicting or infringing laws from the LDC duties provision. The court thus finds that inclusion of the phrase "where permitted to do so under Virginia law" is a voluntary choice by the Party to limit the authority of the Committee.[14] The Party's voluntary decision to limit the authority of the LDC in its Plan and to allow the incumbent to decide upon the method of selecting a nominee is a

---

[13] Neither the State Central Committee nor the RPV itself has sought to intervene and no party has offered any evidence as to what the Party meant by the disputed provision. Instead, the Committee and the Commonwealth point to different members of the RPV State Central Committee and either their legislative positions or their invocation of the Act as incumbents themselves to support one side or the other. The court does not find the actions of any of these individual senators to be a statement on behalf of the Party. See Miller II, 503 F.3d at 369 (recognizing that "[s]imply because a legislator belongs to a political party does not make her at all times a representative of party interests.") (quoting Eu v. San Francisco Cnty. Democratic Cent. Comm., 489 U.S. 214, 225 n.15 (1989)). Instead, "[i]t is quite possible that [an incumbent might act] in his individual interest—rather than that of the local party—in selecting a primary as the method of nomination for his seat." Id. (citing Eu, 489 U.S. at 225 n.15).

[14] The court does not accept plaintiffs' contention that this construction of the Plan is absurd because it will cause the Party to prospectively surrender important associational rights and consent to be bound by unconstitutional provisions of Virginia's election laws as they exist now and might exist in the future. The Plan may simply be amended to avoid this result.

decision the Party is permitted to make and is the cause of any alleged injury to the plaintiffs. For these same reasons, this court cannot redress any injury caused by the Party's governing Plan. Plaintiffs have failed to meet their burden to establish standing.

### III. CONCLUSION

For the reasons discussed above, the court will grant the defendants' motions to dismiss, and will deny all remaining pending motions as moot, including the Committee's and Moxley's motions for preliminary injunction. A separate order will be entered this day.

The Clerk shall serve copies of this memorandum opinion and the accompanying order on all parties of record.

Entered: April 2, 2015.

*Elizabeth K. Dillon*
United States District Judge